UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Lachelle L. o/b/o T.R.T.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

23-CV-6222-LJV
DECISION & ORDER

---

On April 24, 2023, the plaintiff, Lachelle L. ("Lachelle"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that her child, T.R.T., was not disabled.[2]  *Id.*  On July 21, 2023, Lachelle moved for judgment on the pleadings, Docket Item 4-1; on August 4, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 5-1; and on August 18, 2023, Lachelle replied, Docket Item 6.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Lachelle applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Lachelle's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## I.      CHILDREN'S DISABILITY STANDARD

An individual under the age of 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  To make that determination, the ALJ first must decide whether the claimant is currently engaged in substantial gainful activity, not surprisingly defined as work activity that is both substantial and gainful.  20 C.F.R. § 416.972.  "Substantial work activity" involves significant physical or mental activities.  *Id.* § 416.972(a).  "Gainful work activity" is work usually done for pay or profit, whether or not profit is realized.  *Id.* § 416.972(b).  If the claimant is engaged in substantial gainful activity, he or she is not disabled regardless of medical condition, age, education, or work experience, *id.* § 416.924(b); if not, the ALJ proceeds to the next step.  *Id.*

At step two, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe."  *Id.* § 416.924(a).  An impairment is not severe if it is a slight abnormality or a combination

3

of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant has a severe impairment, the ALJ proceeds to the third step. *Id.* § 416.924(a).

At step three, the ALJ decides whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings. *Id.* § 416.924(d). If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled. *Id.* § 416.924(d).

To determine whether impairments functionally equal one in the listings for a claimant who is less than 18 years old, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). That assessment compares how the child performs in each of these domains with the typical functioning of a child the same age without an impairment. *Id.* § 416.926a(b).

"For a child's impairment to functionally equal" an impairment in the listings, "the impairment must result in marked limitations in two domains of functioning or an extreme limitation in one domain." *Encarnacion ex rel. George v. Astrue,* 568 F.3d 72, 75 (2d Cir. 2009) (quoting 20 C.F.R. § 426a(a)) (internal quotation marks omitted). A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

An "extreme" limitation results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

## DISCUSSION

### I.   THE ALJ'S DECISION

On March 10, 2022, the ALJ found that T.R.T. had not been under a disability since Lachelle filed her application for SSI on T.R.T.'s behalf on September 9, 2020. *See* Docket Item 3 at 22. The ALJ's decision was based on the sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

At step one, the ALJ found that T.R.T. was "a preschooler" who had not engaged in substantial gainful activity since Lachelle filed her application when T.R.T. "was an older infant/toddler" on September 9, 2020. Docket Item 3 at 18. At step two, the ALJ found that T.R.T. suffered from two severe, medically determinable impairments: "right corneal scar and amblyopia." *Id*

At step three, the ALJ first found that T.R.T.'s severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 19. More specifically, the ALJ found that T.R.T.'s physical impairments did not meet or medically equal listing 2.02 or 102.02 (loss of central visual acuity), 2.03 or 102.03 (contraction of the visual field in the better eye), or 2.04 or 102.04 (loss of visual efficiency, or visual impairment, in the better eye).

5

*Id*.  The ALJ reached that conclusion "because the record is absent findings of sufficient vision loss in the better eye, loss of central visual acuity, or contraction of the visual field in the better eye."  *Id.*

The ALJ then addressed T.R.T's limitations in the six domains "by considering how [T.R.T.] functions at home, at school, and in the community; the interactive and cumulative effects of all [T.R.T.'s] medically determinable impairments on [T.R.T.'s] activities; and the type, extent, and frequency of help [T.R.T.] needs."  *Id*. at 19-20.  And the ALJ concluded that T.R.T. "does not have an impairment or combination of impairments that functionally equals a listing, because [T.R.T] does not have either 'marked' limitations in two domains of functioning or an 'extreme' limitation in any one domain of functioning."  *Id.* at 22.

More specifically, the ALJ found that T.R.T. had no limitations in attending and completing tasks and less-than-marked limitations in acquiring and using information; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being.  *Id.* at 20.  And because T.R.T.'s limitations did not functionally equal a listed impairment, the ALJ found that T.R.T. had not been under a disability since September 9, 2020, and that Lachelle was not entitled to SSI on T.R.T.'s behalf.  *Id.* at 22.

## II.    ALLEGATIONS

Lachelle argues that the ALJ erred in two ways.  Docket Item 4-1 at 7-11.  First, she argues that the evidence demonstrates that T.R.T has marked limitations in the domains of moving about and manipulating objects and health and physical well-being.  *Id.* at 8-10.  Second, she argues that the ALJ "provided no discussion whatsoever as to

6

how [T.R.T.'s] functioning compared to similar-aged peers without limitations." *Id.* at 10. For the reasons that follow, this Court disagrees.

### III.   ANALYSIS

"When reviewing a child's impairments for functional equivalence, adjudicators must consider all of the relevant evidence[] and employ a 'whole child' approach." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.,* 521 F. Supp. 3d 287, 291 (W.D.N.Y. 2021) (alteration, internal quotation marks, and citation omitted).  "This approach requires the ALJ to consider a child's everyday activities, determine all domains involved in performing them, consider whether that child's medically determinable impairment accounts for limitations in activities, and determine [to] what degree such impairment limits that child's ability to function age-appropriately in each domain." *Id.* at 291-92 (internal quotation marks and citation omitted).  "When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records, such as grades and aptitude and achievement test scores, evidence from medical and non-medical sources, and evidence from the child himself, in order to take into account the whole child." *Martonique A. o/b/o/ M.Q. v. Comm'r of Soc. Sec.,* 2023 WL 5723067, at *5 (W.D.N.Y. Sep. 5, 2023) (quotation omitted).

In assessing T.R.T.'s degree of functional limitation, the ALJ considered all the relevant evidence—medical and nonmedical—and applied the "whole child" approach. For example, the ALJ explicitly addressed Lachelle's hearing testimony that T.R.T. can see objects only directly in front of T.R.T., frequently walks into things, drops things, and has headaches.  Docket Item 3 at 21.  He also noted her testimony that T.R.T. requires

7

assistance dressing, bathing, and toileting, and generally gets along with others and maintains friendships at school.  *Id.*

The ALJ likewise considered medical progress notes documenting T.R.T.'s diagnosis of right corneal opacity/scarring and amblyopia, and he observed that those conditions were treated with regular follow-up care, eyeglasses, and an eye patch.  *Id.* (citing *id.* at 490, 506, 508, 597-605, 607-16).  The ALJ noted that although examinations indicated corneal swelling, T.R.T. maintained good general vision.  *Id.* at 21 (citing *id.* at 489, 574, 588-96); *see also id.* at 21 ("vision was 20/60" (citing *id.* at 508)).  Finally, the ALJ found "no indication that non-conservative care, such as surgery or hospitalization[,] was required" and "no mention of further objective findings of physical abnormalities or a record of treatment addressing frequent headaches."  *Id.* at 21.  *Caridad H. v. Comm'r of Soc. Sec.,* 2019 WL 3253228, at *7 (N.D.N.Y. Jul. 19, 2019) ("The ALJ is entitled to rely on what the record says as well as what it does not say." (citation omitted)).  And based on all that, the ALJ concluded that T.R.T had less-than-marked limitations in all six domains.  Docket Item 3 at 20.

In reaching that conclusion, the ALJ also relied on the opinions of State Agency Medical Consultants A. Saeed, M.D., and R. Abueg, M.D.  Docket Item 3 at 21-22.  As the ALJ found, those opinions supported his findings in the six functional domains.  In fact, the ALJ's findings largely mirrored the findings of the two consulting physicians.

On November 24, 2020, Dr. Saeed reviewed the medical evidence and determined that T.R.T. had no limitations in the domains of attending and completing tasks and caring for oneself and less-than-marked limitations in the domains of acquiring and using information, interacting and relating with others, moving about and

8

manipulating objects, and health and physical well-being.  *Id.* at 50-52.  On March 1, 2021, Dr. Abueg completed a medical statement and opined identically to Dr. Saeed: T.R.T. had no limitations in attending and completing tasks and caring for oneself and less-than-marked limitations in acquiring and using information, interacting and relating with others, moving about and manipulating objects, and health and physical well-being.  *Id.* at 63-64.

The ALJ said that he was "persuaded by the [two] opinions," but that "Dr. Saeed and Dr. Abueg somewhat understate [T.R.T.'s] limitations with regard to caring for [one]self."  *Id.* at 21.  In other words, the ALJ thought that T.R.T. was somewhat more limited than the physicians found.  But the ALJ then explained that although T.R.T. "was diagnosed with right corneal scarring that may cause [T.R.T.] to walk into things at times and need assistance with dressing/bathing, his treatment was limited to conservative care, including regular follow ups and the use of glasses/eye patches."  *Id.* at 22.  And the ALJ concluded that those findings do not support "'marked' restrictions in" moving about and manipulating objects, caring for oneself, and health and physical well-being.  *Id.*

To begin, the ALJ certainly did not err to T.R.T.'s detriment by concluding that T.R.T. was *more* limited than Dr. Saeeb and Dr. Abueg opined.  *See Ramsey v. Comm'r of Soc. Sec.,* 830 F. App'x 37, 39 (2d Cir. 2020); *see also Lesanti v. Comm'r of Soc. Sec.,* 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited [p]laintiff's testimony that she could not focus and was easily distracted . . . and assessed a more generous limitation of 5% off-task time.  The fact that the ALJ afforded

9

[p]laintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").

Moreover, while Lachelle argues that the ALJ erred by failing to evaluate how T.R.T.'s "functioning compares to same-aged children without impairments," see Docket Item 4-1 at 8, 10, the ALJ relied on the opinions of Dr. Saeed and Dr. Abueg who both considered how T.R.T.'s "functioning compares to that of children the same age who do not have impairments," see Docket Item 3 at 53, 67. Cf. Nicole A. o/b/o J.D.J.W. v. Comm'r of Soc. Sec., 2021 WL 916016, at *5 (W.D.N.Y. Mar. 10, 2021) ("Given that the teacher questionnaires all compared J.D.J.W. to 'same-aged children,' and that the ALJ considered these questionnaires, I do not agree with plaintiff that the ALJ failed to adequately compare J.D.J.W. to his same-aged peers."). Because the ALJ relied on the opinions of Dr. Saeed and Dr. Abueg who both explicitly considered the issue Lachelle raises, remand on that issue is not required even if the ALJ erred in not explicitly addressing it.

Lachelle takes specific issue with the ALJ's findings that T.R.T has less-than-marked limitations "in the domains of moving about and manipulating objects[] and health and physical well-being." Docket Item 4-1 at 8.[4] She says that T.R.T.'s visual impairments have caused T.R.T. to walk into things, and she argues that this and other

---

[4] Lachelle says that the ALJ "made no mention of [T.R.T]'s injuries from walking into things, . . . hesitation to participate in activities due to fear of being hurt, . . . frequent headaches, or the [eye] swelling." Docket Item 4-1 at 10. But the ALJ indeed addressed T.R.T.'s corneal swelling, headaches, and walking into things. Docket Item 3 at 21-22. And in any event, "[a]n ALJ need not recite every piece of evidence that contributed to the decision," Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013), nor must the ALJ "reconcile every shred of medical evidence in order to support his opinion with substantial evidence," Kevin F. v. Comm'r of Soc. Sec., 2020 WL 247323, at *9 (N.D.N.Y. Jan. 16, 2020).

evidence "demonstrates that [T.R.T.'s] ability to move about and manipulate objects, and [T.R.T.'s] health and physical well-being[,] were not on par with the abilities of similarly[] aged peers."  See id. at 9 (citing Docket Item 3 at 34-36, 506, 534, 574).  She also notes T.R.T.'s inability "to fully color pictures without it [sic] being turned . . . to eat a full plate of food without it being turned . . . to wash both sides of his body independently, [and] . . . to dress [independently]."  Docket Item 4-1 at 10 (citing Docket Item 3 at 38-40).[5]

But the ALJ addressed those limitations and explained why they did not amount to "'marked' restrictions in any of the functional domains."  See Docket Item 3 at 21-22.  For example, the ALJ acknowledged that T.R.T. sometimes walks into things and needs help with bathing and dressing but noted that conservative treatment, eyeglasses, and patches were sufficient to address those issues.  Id. at 22.  He found that T.R.T. had

---

[5] Lachelle argues that the ALJ committed an error identical to the one requiring remand in Tiffany R. o/b/o A.E.R.S. v. Comm'r of Soc. Sec., 2021 WL 3722187, at *5 (W.D.N.Y. Aug. 23, 2021).  See Docket Item 4-1 at 11.  In particular, she faults the ALJ for providing "his findings in a bullet-point format."  Id.  But in Tiffany R., the court found that remand was necessary not because the ALJ provided his conclusions in bullet-point format but because the ALJ did not sufficiently explain how he reached his conclusions or provide adequate support for them.  2021 WL 3722187, at *5 ("[I]n the December 2019 decision [the ALJ] did not evaluate specific Listings in Step Two or give rationale in Step Three for the domains. . .. This [c]ourt cannot tell why, for example, [the ALJ] changed the findings for domains in moving about and manipulating objects from the 2017 to the 2019 decisions.").  There is no such issue in this case.  Here, this Court can tell exactly why the ALJ reached the conclusions he did, and there is ample support for those conclusions in the record.  And contrary to Lachelle's suggestion, the simple fact that the ALJ stated his conclusions in a bullet-point format is not grounds for remand.  Cf. Elizabeth R. o/b/o J.D.R. v. Comm'r of Soc. Sec., 2023 WL 2325885, at *3 (W.D.N.Y. Mar. 2, 2023) (holding that ALJ correctly employed "whole child" approach and rejecting plaintiff's argument that "the ALJ failed to even discuss the domains individually, give a definition of each domain and the age-appropriate expectations, or give a summary of [the child's] functioning within each domain" (internal quotation marks omitted)).  So contrary to Lachelle's assertion, Tiffany R. is inapposite.

"good general vision," *see id.*; *see also id.* at 21 ("vision was 20/60" (citing *id.* at 508)), and attended regular education classes, *see id.* at 22. And most important, he relied on the opinions of the two reviewing physicians who agreed with each other that T.R.T.'s restrictions were "less than marked" or better in every domain. *Id.* at 21-22.

      It is not the function of this Court to re-weigh evidence or consider *de novo* whether T.R.T. is disabled. *See Urena v. Comm'r of Soc. Sec.,* 379 F. Supp. 3d 271, 278 (S.D.N.Y. 2019) ("Importantly, it is not a reviewing court's function to determine *de novo* whether [a claimant] is disabled." (alteration in original) (internal quotation and citation omitted)). Rather, "[a]bsent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul,* 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." (quotation and citation omitted)). In finding that T.R.T. had no or less-than-marked limitations in all six functional domains, the ALJ considered the progress notes, the other medical records, the hearing testimony, and the opinions of the state agency medical consultants. "While the ALJ could undoubtedly have articulated his reasoning more thoroughly, his finding . . . is nevertheless supported by substantial evidence." *Shatraw ex rel. K.C.Y. v. Astrue,* 2012 WL 589667, at *3 (N.D.N.Y. Feb. 22, 2012); *see also Teena H. o/b/o N.I.K.,* 521 F. Supp. 3d at 292 ("The Court has reviewed the ALJ's written determination

as well as the administrative record, and finds that the ALJ's determination is supported by substantial evidence.").

In sum, the ALJ considered all the evidence of record when assessing the six functional domains. Lachelle's argument boils down to a disagreement with the way the ALJ's weighed the evidence. But it was the responsibility of the ALJ to evaluate the conflicting evidence and to determine the degree of limitation in the specific functional domains. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Because the ALJ did just that and because his determination was supported by substantial evidence, this Court cannot and will not second-guess it. *See Genier,* 606 F.3d at 49.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Lachelle's motion for judgment on the pleadings, Docket Item 4-1, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 5-1, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:   April 7, 2025
         Buffalo, New York

                                           *Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE